IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAI`I

_____
                                    )
KEVIN T. AUBART,                    )
                                    )
              Plaintiff,            )
                                    )
      v.                            )  Civ. No. 19-00459-ACK-KJM
                                    )
RYAN MCCARTHY,                      )
Acting Secretary of the Army,       )
                                    )
              Defendant.            )
_____)


ORDER GRANTING DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S AMENDED FEDERAL TORT CLAIMS ACT COMPLAINT

          Plaintiff Kevin T. Aubart, a civilian employee of the

United States Department of the Army, asserts claims under the

Federal Tort Claims Act (the "FTCA"), 28 U.S.C. § 1346 et seq.,

against Defendant Ryan McCarthy, Acting Secretary of the Army

(the "Army").  Plaintiff's eleven "negligence" claims allege

misrepresentations and defamatory statements made to deprive him

of certain benefits and insult his professional reputation,

conduct infringing his free-speech rights, and retaliation in

response to whistleblowing activities.  The Army moves to

dismiss Plaintiff's claims for want of subject matter

jurisdiction.  For the reasons detailed below, the Court GRANTS

the Army's Motion to Dismiss, ECF No. 15 (the "Motion").  Counts

1, 2, 3, 4, 5, 8, 9, and 10 are dismissed WITHOUT PREJUDICE,

while Counts 6, 7, and 11 are dismissed WITH PREJUDICE.

- 1 -

## BACKGROUND

The following facts are primarily drawn from the operative complaint. See ECF No. 8 (the "Amended FTCA Complaint"). Also relevant is the existence of another action filed earlier in this district before Judge Kobayashi (and now on appeal before the Ninth Circuit), as well as documents filed in connection with a prior motion in this case. The Court takes judicial notice of the existence of the prior proceeding and the statements made by Plaintiff in this case, as detailed below and to the extent consistent with the proper scope of judicial notice.[1]

## A.    The Prior 2017 Reimbursement Action

Before filing this case, Plaintiff brought a separate lawsuit in this district, Aubart v. Esper, Civ. No. 17-00611-LEK-KJM (the "2017 Reimbursement Action"), in which he sought reimbursement of travel expenses arising from his temporary relocation to Schofield Barracks from his permanent duty station at Fort Shafter. Judge Kobayashi issued an order on August 19, 2019, granting summary judgment in the defendant's favor, which

---

[1] Facts contained in public records are considered appropriate subjects of judicial notice. The Court may not, however, take judicial notice of facts found by a court in another judicial proceeding. See M/V Am. Queen v. San Diego Marine Constr. Corp., 708 F.2d 1483, 1491 (9th Cir. 1983). That said, the Court may judicially notice the existence of another court's opinion or proceedings. Cal. ex rel. RoNo, LLC v. Altus Fin. S.A., 344 F.3d 920, 931 (9th Cir. 2003). Here, the Court limits its judicial notice to the existence of the separate action before Judge Kobayashi, not any specific factual findings made therein.

is currently on appeal before the Ninth Circuit.  See 2017

Reimbursement Action, ECF Nos. 91 (order granting) & 95

(appeal).

After the defendant was granted summary judgment in

the 2017 Reimbursement Action, Plaintiff filed a complaint in

that same case asserting new claims under the Federal Tort

Claims Act ("FTCA").  Id., ECF No. 92.  Judge Kobayashi issued

an order in response, noting that Plaintiff's amendment to his

complaint was untimely.  Id., ECF No. 94.  Judge Kobayashi had

previously dismissed Plaintiff's FTCA claims because he had

failed to allege exhaustion of his administrative remedies.  Id.

She had allowed Plaintiff a designated time to amend his

complaint but warned that failure to do so within that time

would result in his FTCA claims being dismissed with prejudice.

Id.  When Plaintiff ultimately filed a "Motion to Withdraw FTCA

Complaint," Judge Kobayashi construed that as "Plaintiff's

statement of position acknowledging that his FTCA claim did not

meet the exhaustion requirement," and that he would not file a

second amended complaint.  Id.

Judge Kobayashi went on to unequivocally reject

Plaintiff's untimely request to amend his complaint:

> [E]ven if the Court considered Plaintiff's
> untimely motion for leave to file the FTCA
> Complaint, to the extent the amended complaint
> is based on Defendant's denial of Plaintiff's
> request for travel reimbursement ("TDY

> Claim"), this Court has already determined
> that Defendant is entitled to summary judgment
> on the TDY claim.  Therefore, that portion of
> Plaintiff's FTCA Complaint is now moot.
> Because it is moot, amendment would be futile.

See 2017 Reimbursement Action, ECF No. 94 (internal citations

omitted).  She did note, however, that certain claims in

Plaintiff's proposed FTCA complaint were based on new facts and

new claims—e.g., his whistleblower claim; retaliation claims;

and First Amendment claims.  Id.  Thus, because those claims

were not originally raised in the 2017 Reimbursement Action,

Judge Kobayashi noted that Plaintiff was entitled to attempt to

refile those claims in a separate action.  Id.

**B.    The FTCA Action**

Plaintiff did just that.  He brought this action (the

"FTCA Action") on August 25, 2019, and he filed the now-

operative complaint on November 17, 2019.  See Am. Compl.  He

originally filed an administrative claim with the government

agency, a prerequisite to suit under the FTCA.  See 28 U.S.C. §

2675(a); Am. Compl. ¶ 2.  While he does not identify the

specific agency, Plaintiff asserts that the agency failed to

dispose of his claim within six months, which prompted him to

file this Action.  Am. Compl. ¶ 2.

While Plaintiff reframes and enhances his allegations

to assert different causes of action, his claims stem to some

degree from the same allegations made in the 2017 Reimbursement

Action in which he sought reimbursement of mileage and certain travel benefits. The claims now before the Court in the Amended FTCA Complaint primarily relate to allegations that Army employees and leadership made various misrepresentations intended to deprive Plaintiff of such mileage and travel benefits. Specifically, Plaintiff asserts that Army employees made false statements that Plaintiff and other employees were informed of a permanent change of duty station. The Amended FTCA Complaint likewise alleges that Army employees made false statements to the court when they filed sworn declarations to this effect in the 2017 Reimbursement Action. Plaintiff alleges that employees and leadership also engaged in conduct that infringed his free-speech rights and constituted unlawful retaliation. Specifically, when Plaintiff complained of the allegedly-false statements, he asserts that Army employees and leadership retaliated.

The Amended FTCA Complaint asserts eleven counts of "negligence" against the Army. The claims are framed as hinging on violations of the Whistleblower Protection Act of 1989 (the "WPA"), 5 U.S.C. § 2302, et seq. and "other federal statutes." Id. ¶ 3. Count 1 of the Amended FTCA Complaint alleges that an Army employee negligently "directed" Plaintiff to drive his personal vehicle, in violation of the State Department of Defense's Joint Travel Regulations. The remainder of

Plaintiff's eleven claims can be classified into three
categories: the "Misrepresentation Claims" (Counts 2-5 & 10),
the "Whistleblower Claims" (Counts 6, 7, & 11), and the "First
Amendment Claims" (Counts 8-9).

The Misrepresentation Claims allege various false
statements that deprived Plaintiff of certain benefits, damaged
his professional reputation, and caused him to incur unnecessary
litigation costs. Specifically, Counts 2, 4, 5, and 10 allege
that Army employees breached duties owed under the Standards of
Ethical Conduct for Employees of the Executive Branch, 4 C.F.R.
Ch. XVI, Subch. B., Pt. 2635 (the "Ethics Code"). See Am.
Compl. Count 2 (allegations of misrepresentation that Plaintiff
was notified of a permanent change of station), Count 4
(allegations of misrepresentation that Plaintiff refused an
order to drive his personal vehicle), Counts 5 & 10 (allegations
of failure to disclose material facts to the district court in
the 2017 Reimbursement Action). And Count 3 alleges that Army
employees breached duties under the "Army Core Principles of
integrity" by negligently making false or misleading claims that
Plaintiff was notified of a permanent change of station.

The Whistleblower Claims allege that Army employees
breached duties owed under the WPA. Specifically, Count 6
asserts that an Army employee shared Plaintiff's complaint in
retaliation and "for malicious purpose." Count 7 complains of

an Army employee's sharing of Plaintiff's complaint and canceling of his transfer to Okinawa, allegedly in retaliation for his filing of the complaint. And Count 11 alleges that Army leadership unlawfully refused to investigate Plaintiff's complaint or to "take any action to protect Plaintiff's rights under federal statutes."

Finally, the First Amendment Claims allege that Army employees negligently breached a duty to protect Plaintiff's First Amendment right to free speech by attempting to stop Plaintiff from communicating with Senator Brian Schatz and "any Army personnel."

## C. Procedural Posture

Now before the Court is Defendant's Motion to Dismiss in which the Army argues that the Court lacks subject matter jurisdiction over Plaintiff's claims. The Army filed its Motion on December 20, 2019. Plaintiff filed his Opposition Brief on March 15, 2020, ECF No. 32, and Defendant filed its Reply Brief on March 17, ECF No. 34.[2/] The Court held a telephonic hearing on March 31, 2020.

---

[2/] The Court recognizes that Plaintiff's response brief was untimely filed. When Plaintiff—who is representing himself in this case—initially missed the deadline, the Court contacted him and advised him that the Court would consider his opposition brief if filed before March 16. Plaintiff complied with that extension and so the Court will not strike Plaintiff's brief as untimely.

## STANDARDS

**A.    Rule 12(b)(1)**

A defendant may challenge a court's subject matter jurisdiction under Federal Rule of Civil Procedure ("Rule") 12(b)(1).  "A party invoking the federal court's jurisdiction has the burden of proving the actual existence of subject matter jurisdiction."  See Thompson v. McCombe, 99 F.3d 352, 353 (9th Cir. 1996).

A challenge to a court's subject matter jurisdiction may be either "facial" or "factual."  Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004).  In a facial attack, "the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction."  Id. (quoting Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004)).  By contrast, in a factual attack, "the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction."  Id. (quoting Safe Air, 373 F.3d at 1039).  Here, the Army's Motion brings a facial attack on Plaintiff's Amended FTCA Complaint, arguing that the allegations therein do not invoke this Court's subject matter jurisdiction.

**B.    Special Considerations for Pro Se Litigants**

Pro se pleadings and briefs are to be construed liberally.  Balisteri v. Pacifica Police Dep't., 901 F.2d 696 (9th Cir. 1990).  The Court should act with leniency toward pro se litigants when they technically violate a rule.  Draper v. Coombs, 792 F.2d 915, 924 (9th Cir. 1986); Motoyama v. Haw. Dep't of Transp., 864 F. Supp. 2d 965, 975 (D. Haw. 2012).  However, pro se litigants are "not excused from knowing the most basic pleading requirements."  Am. Ass'n of Naturopathic Physicians v. Hayhurst, 227 F.3d 1104, 1107 (9th Cir. 2000).  Pro se litigants must follow the same rules of procedure that govern other litigants.  Motoyama, 864 F. Supp. 2d at 975.

## DISCUSSION

"The basic rule of federal sovereign immunity is that the United States cannot be sued at all without the consent of Congress."  Block v. North Dakota, 461 U.S. 273, 287 (1983). "The doctrine of sovereign immunity applies to federal agencies and to federal employees acting within their official capacities."  Hodge v. Dalton, 107 F.3d 705, 707 (9th Cir. 1997).  A waiver of sovereign immunity must be unequivocal and cannot be implied.  Lane v. Pena, 518 U.S. 187, 192 (1996); United States v. Mitchell, 445 U.S. 535, 538 (1980). The plaintiff bears the burden of establishing the unequivocal

waiver of immunity.  See <u>Holloman v. Watt</u>, 708 F.2d 1399, 1401 (9th Cir. 1983).

The FTCA provides a limited waiver of sovereign immunity for civil actions against the government for injuries "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b)(1).  Simply put, the FTCA authorizes tort claims based on state law against the government in limited circumstances.  See 28 U.S.C. §§ 1346(b), 2674, 2680(h).  It is the exclusive remedy for tort claims against the United States.  28 U.S.C. § 2679; <u>F.D.I.C. v. Craft</u>, 157 F.3d 697, 706 (9th Cir. 1998).

This case raises three jurisdictional questions. First, has Plaintiff sufficiently alleged claims within the general scope of the FTCA?  Second, assuming he has, do any of Plaintiff's claims fall within an express exception to the FTCA's waiver of sovereign immunity?  And, third, does the Civil Service Reform Act preempt certain of Plaintiff's claims? Having analyzed these questions, the Court holds that it lacks subject matter jurisdiction to hear Plaintiff's claims. Accordingly, the Amended FTCA Complaint must be DISMISSED.

**I.  Plaintiff's Claims Fall Outside the Scope of the Federal Tort Claim Act's Limited Waiver of Sovereign Immunity**

The first issue is whether Plaintiff's claims generally fall within the scope of the waiver of immunity provided by the FTCA.  As stated, the FTCA provides for a limited waiver of sovereign immunity for tort claims brought against the government in limited circumstances.  The waiver of immunity applies only "where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b)(1).  Thus, for Plaintiff to bring claims against the Army, he must point to Hawaii state law that would make the Army tortiously liable in similar circumstances if it were a private person.  Dettling v. United States, 983 F. Supp. 2d 1184, 1199 (D. Haw. 2013) ("[J]urisiction under the FTCA may only be found where there exist analogous circumstances in which state law would impose a duty of care on a private person.").

To decide whether Plaintiff's claims fall within the scope of the FTCA waiver, the Court must look to duties imposed on private parties by state law, not federal law.  Id. Specifically, the FTCA does not waive sovereign immunity for claims where the underlying negligence "arises out of the failure of the United States to carry out federal statutory duties or otherwise follow federal law."  Id.; see also Delta

Savings Bank v. United States, 265 F.3d 1017, 1026 (9th Cir.
2001) ("To bring suit under the FTCA based on negligence per se,
a duty must be identified, and this duty cannot spring from
federal law.").  The waiver therefore does not apply to
constitutional torts or claims where the underlying negligence
arises under a federal statute, regulation, or guidance.  See,
e.g., Jachetta v. United States, 653 F.3d 898, 904 (9th Cir.
2011) (holding that constitutional torts are not actionable
under the FTCA); Gillman v. United States, No. CV 16-00001 JMS-
RLP, 2017 WL 969180, at *7 (D. Haw. Mar. 13, 2017) (dismissing
FTCA claim brought pursuant to violations of a federal statute);
Demoruelle v. United States, No. CV 15-00195 LEK-KSC, 2015 WL
5680325, at *3 (D. Haw. Sept. 25, 2015) (dismissing FTCA claim
alleging duties arising from a government agency's statutes,
regulations, and guidance).

        Here, the Amended FTCA Complaint plainly asserts FTCA
claims that rest on federal, not state, law.  Count 1 asserts a
duty of care arising from the State Department of Defense's
Joint Travel Regulations; the Misrepresentation Claims are based
on duties owed under the Ethics Code, which applies to
government employees; the Whistleblower Claims hinge on duties
stemming from a federal statute, the WPA; and the First
Amendment Claims rely on protections afforded by the United

States Constitution.  Thus, all eleven claims are outside the

scope of the FTCA's limited waiver of sovereign immunity.

        None of Plaintiff's arguments in his Opposition Brief

compel a different conclusion.  First, Plaintiff's arguments

only focus on the Misrepresentation and First Amendment Claims;

Plaintiff does not address Count 1 or the Whistleblower Claims

at all.  As to the Misrepresentation and First Amendment Claims,

Plaintiff attempts unsuccessfully to recast them under state

law.  With respect to the former, Plaintiff cites Haw. Rev.

Stat. § 710-1063, which makes unlawful false material statements

in an official proceeding.  Opp. Br. 3.  And on the latter,

Plaintiff attempts to reframe the First Amendment Claims as

state law claims for "abusing the litigation process."[3/]  Opp.

Br. 6 (citing Haw. Rev. Stat. § 663-1).  Neither attempt is

_____

        [3/]  Plaintiff has not raised the argument that his First Amendment
Claims would be viable if interpreted or reframed under the Hawaii state
constitution's free-speech clause, which protects the same rights as the
First Amendment of the U.S. Constitution.  See Haw. Const. Art. 1 § 4.
Still, the Court takes this opportunity to note that the Hawaii constitution
would not provide an avenue for Plaintiff's First Amendment Claims under the
FTCA.  As discussed, the FTCA's waiver of sovereign immunity applies only
where the government "if a private person" would be liable to the claimant
under Hawaii law.  28 U.S.C. § 1346(b)(1).  Hawaii state courts have not
expressly recognized an implied right of action under the state constitution,
so a claim brought thereunder would still not fall within the scope of the
FTCA's waiver.  See Demoruelle, 2015 WL 6478610 at *4 (holding that
plaintiff's "right to privacy" claim under the Hawaii constitution was not
actionable under the FTCA).  Moreover, because the government has not waived
sovereign immunity with respect to federal constitutional torts, the Court
sees no reason to treat differently a First Amendment claim and a claim under
a state constitution asserting the exact same rights.  See Hernandez v.
United States, 939 F.3d 191, 205 (2d Cir. 2019) ("[I]t does not make sense
that [Plaintiff] should be able to pursue a state due process claim when he
cannot pursue a federal due process claim.").  All of this said, Plaintiff's
Amended FTCA Complaint plainly asserts claims under the federal Constitution,
not the Hawaii constitution, so the Court need not resolve the issue.

successful at saving Plaintiff's claims because—even accepting Plaintiff's recast allegations—express exceptions to the waiver of immunity would be triggered.

First, the FTCA expressly excludes misrepresentation claims from the scope of its waiver of sovereign immunity. See 28 U.S.C. § 2680(h). And second, as to the First Amendment claims recast as "abuse of process" claims," the FTCA's waiver of sovereign immunity is limited to such claims brought against "investigative or law enforcement officers." Id. The Assistant U.S. Attorney ("AUSA") and the Army employee referenced in the Opposition Brief do not fall within that definition.[4] See id. (defining "investigative or law enforcement officer" as an officer "empowered by law to execute searches, to seize evidence, or to make arrests, for violations of Federal law").

In sum, all eleven of Plaintiff's negligence claims spring from federal and not state law. Thus, his claims are outside the scope of the waiver of sovereign immunity provided under the FTCA, and the claims are properly dismissed on that basis.[5]

---

[4] The claims of misrepresentation and "abuse of process" against the AUSA who defended the 2017 Reimbursement Action are also raised for the first time in Plaintiff's Opposition. Thus, beyond falling within express exceptions to the FTCA's waiver, these claims not alleged in the Amended FTCA Complaint are improper when raised at the opposition stage. See Broam v. Bogan, 320 F.3d 1023, 1027 (9th Cir. 2003); see also Reply Br. at 5, 7.

[5] To the extent that any of Plaintiff's claims—particularly Count 1—challenge Judge Kobayashi's rulings in the 2017 Reimbursement Action or (Continued . . . )

## II.  The Misrepresentation Claims Fall Within an Express
##      Exception to the FTCA's Waiver of Sovereign Immunity

The next issue is whether, assuming the FTCA waiver were applicable, any of Plaintiff's claims would still be barred by one of the FTCA's exceptions to governmental liability.  See 28 U.S.C. § 2680.  The Army argues that the Misrepresentation Claims are barred by the "misrepresentation exception."  Mot. at 10-12; see also 28 U.S.C. § 2680(h).  The Court agrees.

The FTCA expressly exempts certain types of claims from its waiver of sovereign immunity.  Relevant here, the waiver does not apply to "[a]ny claim arising out of . . . libel, slander, misrepresentation, deceit, or interference with contract rights."  28 U.S.C. § 2680(h).  The Ninth Circuit has held that this misrepresentation exception "shields government employees from tort liability for failure to communicate information, whether negligent, or intentional."[6]  Lawrence v. United States, 340 F.3d 952, 958 (9th Cir. 2003).  If a claim is exempted from the FTCA's waiver of sovereign immunity, district

_____

otherwise seek travel benefits or reimbursement of mileage expenses arising from Plaintiff's commute in his personal vehicle between his personal residence and Schofield Barracks, Plaintiff is collaterally estopped from relitigating those issues before this Court.  See Thompson v. Torres, Civ. No. 17-00319 DKW-RLP, 2017 WL 4413187, at *4 (D. Haw. Oct. 4, 2017) ("[A] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.").  Plaintiff expands on many of these arguments in his Opposition Brief as well.  See Opp. Br.

[6]  At the hearing, Plaintiff emphasized that his claims are based on intentional false statements, not negligent misrepresentations.  As stated, that distinction is irrelevant here; the exception shields liability for both negligent and intentional misrepresentations.

courts are without subject matter jurisdiction to hear the case.
Mundy v. United States, 983 F.2d 950, 952 (9th Cir. 1993).
Ambiguities as to whether a claim falls within an exception to
the FTCA's waiver are to be construed in favor of immunity.
F.A.A. v. Cooper, 566 U.S. 284, 290-91 (2012).

To determine whether a claim falls within the
misrepresentation exception, courts consider the distinction
between "the performance of operational tasks and the
communication of information."  United States v. Fowler, 913
F.2d 1382, 1387 (9th Cir. 1990) (quoting Guild v. United States,
685 F.2d 324, 325 (9th Cir. 1982)).  The exception to the waiver
applies to claims for "injuries resulting from commercial
decisions made in reliance on government misrepresentations."
Id. (quoting Guild, 685 F.2d at 325); see, e.g., Lawrence, 340
F.3d at 958 (dismissing claims for government's failure to
disclose certain information at a court hearing).  It would not
apply, however, to claims for "injuries resulting from
negligence in performance of operational tasks even though
misrepresentations are collaterally involved."  Fowler, 913 F.2d
at 1387 (quoting Guild, 685 F.2d at 325).

The Army argues that, under this definition, the
Misrepresentation Claims are all barred by § 2680(h).  The Court
agrees.  These claims, at their core, allege harm caused by the
communication of false or misleading information or defamatory

statements.  Any allegations involving the government's
negligent or improper performance of operational tasks are
ancillary, and the injuries claimed by Plaintiff are not the
result of such performance.  Plaintiff alleges that he was
injured <u>because of</u> the various employees' misleading or
defamatory statements.  <u>See, e.g.,</u> Am. Compl. Count 2 ("Ms.
Orejana knew or should have known her misleading claim would
cause harm to Plaintiff."); Count 3 ("LTC Siegrist's false or
misleading claim of a permanent change of station directly
caused Plaintiff harm."); Count 4 ("Ms Orejana's false
defamatory statements directly caused harm to Plaintiff's
professional reputation and caused or encouraged others to
retaliate against Plaintiff."); Count 5 (alleging failure to
disclose information in the 2017 Reimbursement Action "directly
caused harm to Plaintiff in unnecessary litigation, and
financial and emotional damages"); Count 10 ("Mr Chilson's false
or misleading statement directly caused harm to Plaintiff by
unnecessarily extending litigation . . . .").  In other words,
Plaintiff does not appear to argue that he was injured by the
government's operational decisions like whether Plaintiff's duty
stations change was permanent or temporary, just that he was
injured by misrepresentations about the nature of the changes.[7]

---

[7]  Even if the Court interpreted the Misrepresentation Claims to be for
(Continued . . . )

The crux of the allegations underlying the Misrepresentation Claims is injury caused by the communication of misleading information, not negligent or wrongful performance of operational tasks. Accordingly, § 2680(h) applies. Thus, even assuming the FTCA's general waiver of liability applied in the first place, Plaintiff's misrepresentation claims are expressly excluded from such waiver.

## III. The Whistleblower Claims are Preempted by the Civil Service Reform Act

The next issue is whether certain of Plaintiff's claims are preempted by the CSRA, which provides the framework for handling adverse personnel actions against federal employees. While Plaintiff frames his claims as torts under the FTCA, the Army argues that the Whistleblower Claims allege "prohibited personnel practices," for which the exclusive remedy is the CSRA. Mot. at 12-15. The Court again agrees with the Army's position.

The Supreme Court has recognized that the CSRA "comprehensively overhauled the civil service system" and created a new framework for evaluating adverse personnel actions against federal employees. United States v. Fausto, 484 U.S. 439, 443–45 (1988). As the Ninth Circuit has explained, "both

---

wrongful performance of operational tasks, with only an ancillary misrepresentation element, such claims would likely constitute "prohibited personnel practices" preempted by the CSRA, which the Court discusses further infra, Section III.

the CSRA and its legislative history show that Congress did not intend state tort law to operate within the interstices of the act." <u>Saul v. United States</u>, 928 F.2d 829, 842 (9th Cir. 1991); <u>see also</u> <u>Rivera v. United States</u>, 924 F.2d 948, 951 (9th Cir. 1991) (explaining that to permit FTCA claims to supplant the CSRA's remedial scheme would defeat the CSRA's purpose). Moreover, the WPA—which was originally enacted as part of the CSRA but later amended and strengthened as a stand-alone act—increases protections for whistleblowers, but it only does so "within the context of the CSRA." <u>Rivera</u>, 924 F.2d at 954. Thus, the WPA "does not authorize government employees to bring FTCA claims arising out of conduct addressed by the CSRA." <u>Id.</u>

The CSRA addresses "prohibited personnel practices." <u>Mahtesian v. Lee</u>, 406 F.3d 1131, 1131-34 (9th Cir. 2005). It limits federal employees challenging such practices to an administrative remedial system. <u>Id.</u> (holding that the CSRA preempts employment-related tort claims under the FTCA). Thus, to the extent that the conduct Plaintiff is challenging here falls within the CSRA's definition of "prohibited personnel practices," the CSRA's administrative procedures provide Plaintiff's only remedies and this Court cannot resolve those claims under the FTCA. <u>Id.</u>; <u>see also</u> <u>Mangano v. United States</u>, 529 F.3d 1243, 1246 (9th Cir. 2008) (explaining that personnel-related claims brought by a federal employee are preempted even

- 19 -

when no remedy is available under the CSRA). The CSRA defines "prohibited personnel practices" as any "personnel action" taken for an improper motive by someone who has authority to take personnel actions. See 5 U.S.C. § 2302(b); Mahtesian, 406 F.3d at 1134. "Personnel action" broadly includes "any appointment, promotion, disciplinary or corrective action, detail, transfer, reassignment, reinstatement, restoration, reemployment, performance evaluation, pay or benefits decision, mandatory psychiatric examination, or any other significant change in duties, responsibilities, or working conditions." Mangano, 529 F.3d at 1247 (citing 5 U.S.C. § 2302(a)(2)(A)).

Here, Plaintiff's Whistleblower Claims arise out of the Army allegedly retaliating against Plaintiff after he complained of Army employees making false statements about the nature of a duty station transfer. Plaintiff frames his claims as retaliation for whistleblowing activity and violations of the WPA. For example, he asserts a specific employment opportunity—transfer to Okinawa—which Plaintiff alleges he was denied. The conduct alleged in the Whistleblower Claims falls squarely within the scope of the CSRA's definition of "prohibited personnel practices." Thus, the CSRA's administrative procedures are Plaintiff's only available remedies and this Court cannot resolve Plaintiff's claims under the FTCA.

See Saul, 928 F.2d at 835-43 (holding that the CSRA precludes both common-law tort claims and constitutional law claims).

Notably, Plaintiff does not counter or address the preemption problem with his Whistleblower Claims in his Opposition Brief. What is more, Plaintiff conceded that many of his claims fall within the scope of the CSRA when he recently sought leave to amend his Complaint and again at the hearing on the instant Motion. ECF No. 25 at 1 (motion for leave to amend stating, "Plaintiff now concedes the bulk of his various claims are more accurately categorized as intentional acts of retaliation for engaging in protected activity under the Civil Service Reform Act."). Magistrate Judge Mansfield denied Plaintiff leave to recast his claims under the CSRA, holding that amendment would be futile because the district court would lack subject matter jurisdiction over the claims. ECF No. 31 ("Mansfield Order") at 8-9. Judge Mansfield's order accurately details the specific administrative review process for bringing employment-personnel claims under the CSRA. Mansfield Order at 8; see also Mot. at 13-14. In particular, such claims must first be filed in a complaint with the Office of Special Counsel ("OSC") and then appealed to the Merit Systems Protection Board ("MSPB"). Mansfield Order at 8; see also 5 U.S.C. §§ 1214(a)(3), 1221(a). Even then, once judicial review becomes available, district courts do not have jurisdiction to review

most MSPB decisions because jurisdiction in most cases is limited to the Federal Circuit or any court of appeals of competent jurisdiction.[8] Mansfield Order at 8-9 (citing 5 U.S.C. § 7703(b)(1)(B)).

In sum, the Court holds that the CSRA preempts Plaintiff's Whistleblower Claims. Thus, Counts 6, 7, and 11 are further subject to dismissal on that basis. The Court declines to liberally read Plaintiff's claims as brought under the CSRA. As Judge Mansfield already held, this Court would still be without jurisdiction to hear those claims.[9] See Mansfield Order at 8-9; see also Kerr v. Jewell, 836 F.3d 1048, 1058 (9th Cir. 2016) (holding that district court lacked jurisdiction over WPA claim not first reviewed by the MSPB). Accordingly, the Whistleblower Claims are DISMISSED as preempted by the CSRA.

---

[8] Only where a case is a "mixed-case appeal" does it becomes subject to a district court's jurisdiction. Mixed-case appeals involve CSRA claims and a corresponding discrimination claim. See Toyama v. Leavitt, Civ. No. 08-00198 ACK-KSC, 2009 WL 144323, at *1 (D. Haw. Jan. 21, 2009) (discussing jurisdiction in mixed-case appeals and non-mixed cases). Even read liberally, Plaintiff's allegations in the Amended FTCA Complaint cannot be read to implicate any discriminatory element, and there is no basis for concluding that this is a mixed-case appeal. Regardless, even if this were a mixed-case appeal, Plaintiff has not established that he complied with the administrative review process by first filing a case with the OSC and then seeking the MSPB's review. See id.; see also Kerr, 836 F.3d at 1058.

[9] The Court notes that, at the hearing, Plaintiff indicated that he was now working with the OSC and MSPB. Plaintiff asked the Court for an extension in this case pending the outcome or ability to pursue his claims with those agencies. While the Court is sympathetic to Plaintiff's attempts to navigate the proper remedial scheme here, the outcome with the OSC or MSPB would not have any bearing on this case. As discussed above, this Court would still be without jurisdiction over the Whistleblower Claims, whether or not Plaintiff exhausts the underlying administrative review process.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS the Army's Motion to Dismiss, ECF No. 15, as follows:

1.　All eleven counts are dismissed because they hinge on federal law, so the limited waiver of sovereign immunity provided by the FTCA does not apply.

2.　Even assuming the waiver applied in the first instance, Counts 2, 3, 4, 5, and 10 (the Misrepresentation Claims) are dismissed because they fall within an express exception to the FTCA.

3.　Counts 6, 7, and 11 (the Whistleblower Claims) are claims for "prohibited personnel practices" preempted by the CSRA.

"A district court should not dismiss a pro se complaint without leave to amend unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." <u>Akhtar v. Mesa</u>, 698 F.3d 1202, 1212 (9th Cir. 2012) (citation and internal quotation marks omitted). Because it is clear that Plaintiff's Whistleblower Claims could not be saved by amendment (and in fact Judge Mansfield has already so held) the Whistleblower Claims (Counts 6, 7, and 11) are dismissed WITH PREJUDICE. Should Plaintiff wish to pursue his claims under the CSRA—which the Court understands Plaintiff to already

be doing—this Order does not prevent him from doing so. But he is directed to comply with the proper administrative review process—which is outlined above and in the Mansfield Order.

The remainder of Plaintiff's claims (Counts 1, 2, 3, 4, 5, 8, 9, and 10) are dismissed WITHOUT PREJUDICE. It is conceivable that Plaintiff could amend his claims under the FTCA to state a claim against the government over which the Court has jurisdiction. In that regard, Plaintiff must establish a state law basis for the Army's liability.

If Plaintiff wishes to amend these claims, he must file a second amended complaint by **June 2, 2020**. Plaintiff's second amended complaint must include all of the claims that he wishes to pursue, as well as all of the allegations that his claims are based upon, even if he previously presented these allegations in the Amended FTCA Complaint. Plaintiff cannot incorporate by reference any part of the Amended FTCA Complaint into the second amended complaint.

The Court cautions Plaintiff that if he fails to file his second amended complaint by June 2, 2020, the Court will dismiss Plaintiff's case with prejudice; or, if a claim in the second amended complaint fails to cure the defects identified in this Order, this Court will dismiss that claim with prejudice. The Court emphasizes that it has not granted Plaintiff leave to make other changes, such as adding new parties or entirely new

claims.  Leave to amend is limited to curing the jurisdictional defects described in this Order with respect to asserting viable claims under the FTCA.  If Plaintiff wishes to make further amendments not within the scope of leave provided in this Order, he must file a motion for leave to amend pursuant to Rule 15(a)(2) and Local Rule 10.4.

IT IS SO ORDERED.

DATED:  Honolulu, Hawai`i, April 3, 2020.



Alan C. Kay
Sr. United States District Judge

Aubart v. McCarthy, Civ. No. 19-00459 ACK-KJM, Order Granting Defendant's Motion to Dismiss Plaintiff's Amended Federal Tort Claims Act Complaint.