```
              IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF HAWAI`I
_____
                                    )
KEVIN T. AUBART,                    )
                                    )
               Plaintiff,           )
                                    )
     v.                             )   Civ. No. 19-00459-ACK-KJM
                                    )
RYAN MCCARTHY,                      )
Acting Secretary of the Army,       )
                                    )
               Defendant.           )
_____)
```

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
SECOND AMENDED FEDERAL TORT CLAIMS ACT COMPLAINT**

Plaintiff Kevin T. Aubart, a civilian employee of the United States Department of the Army, asserts a claim for "legal malpractice" against Defendant Ryan McCarthy, Acting Secretary of the Army (the "Army"), pursuant to the Federal Tort Claims Act (the "FTCA"), 28 U.S.C. § 1346 et seq. After his original complaint, ECF No. 8, was dismissed without prejudice for want of subject-matter jurisdiction under the FTCA, Plaintiff Aubart amended his claims to allege "legal malpractice" based on the conduct of an Army attorney. ECF No. 42. The Army has again moved to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(1) for lack of subject-matter jurisdiction. For the reasons detailed below, the Court GRANTS Defendant's Motion to Dismiss, ECF No. 43, and hereby dismisses Plaintiff's claims with prejudice.

**BACKGROUND**

I. **Procedural Background**

In 2017, Plaintiff sued the Army seeking reimbursement of travel expenses arising from his temporary relocation to Schofield Barracks from his permanent duty station at Fort Shafter.  See Aubart v. Esper, Civ. No. 17-00611-LEK-KJM (the "2017 Reimbursement Action").  Judge Kobayashi granted summary judgment in the Army's favor, which is currently on appeal before the Ninth Circuit.  See Aubart v. McCarthy, No. 19-16676 (9th Cir.).  Plaintiff thereafter brought this case alleging that Army employees and leadership made various misrepresentations intended to deprive Plaintiff of mileage and travel benefits to which he was entitled.

The Court dismissed Plaintiff's prior iteration of his complaint for lack of subject-matter jurisdiction.  See ECF No. 37 ("Prior Dismissal Order").  The Court held that none of the claims fell within the FTCA's limited waiver of sovereign immunity because (1) they all sprang from federal rather than state law, (2) the employment-related "whistleblower" or "retaliation" claims were preempted by the Civil Service Reform Act ("CSRA"), and (3) any claims arguably based on state law causes of action were excluded from the waiver of sovereign immunity pursuant to 28 U.S.C. § 5680(h), the "misrepresentation

exception." Id. at 23.  With Plaintiff being pro se, the Court granted leave to amend, with the exception of the claims preempted by the CSRA, which the Court dismissed with prejudice. Id. at 23-24.

Plaintiff filed the now-operative complaint on June 17, 2020, asserting a claim for legal malpractice.  See ECF No. 42 ("Second Amended Complaint" or "2AC").  The Army moved for dismissal two weeks later, arguing that the Court is still without jurisdiction.  ECF No. 43 ("Motion").  Plaintiff filed his Opposition on July 12, ECF No. 46, and the Army filed its Reply on July 28, ECF No. 48.  The Court held a telephonic hearing on Tuesday, August 11, 2020.

**II.  Factual Allegations**

The Second Amended Complaint reframes many of the previously-asserted factual allegations to assert a claim for "legal malpractice."  See 2AC.  The allegations target Army attorney Rachael Orejana, who represented the Army in administrative agency proceedings before the Civil Board of Contract Appeals ("CBCA"), in which Plaintiff sought travel reimbursement.[1]  According to the Second Amended Complaint, Ms. Orejana, "while working within the scope of her federal

---

[1] In his Opposition, Plaintiff raises for the first time allegations against Scott Chilson.  The Court will not consider new allegations raised for the first time in opposition briefing.  See Gaspar v. JP Morgan Chase Bank, Nat'l Ass'n, Civ. No. 10-00064 DAE-RLP, 2012 WL 380968, at *6 n.2 (D. Haw. Feb. 6, 2012).

employment as a US Army lawyer," was negligent in (1) providing the Army with incorrect legal advice regarding Plaintiff's claim for mileage reimbursement, 2AC at 1-3; (2) making "factually incorrect" statements in pleadings filed on behalf of the Army in agency proceedings, id. at 2-3; and (3) failing to disclose to Judge Kobayashi in the 2017 Reimbursement Action that statements made in the agency proceedings were incorrect, id. at 3-4.

Plaintiff also alleges that Ms. Orejana breached a "duty to all soldiers" by depriving Plaintiff of "lawful travel reimbursement."  Id.  Plaintiff alleges retaliation as well, which purportedly caused Plaintiff to suffer "loss of employment opportunities, violations of his 1st Amendment rights, damage to his professional reputation, damage to his professional relationships, defamation of his good character, and needless suffering of severe stress, emotional distress and mental anguish caused by three years of intense and unnecessary litigations."  Id.

### STANDARDS

**A.   Rule 12(b)(1)**

A defendant may challenge a court's subject matter jurisdiction under Rule 12(b)(1).  "A party invoking the federal court's jurisdiction has the burden of proving the actual

existence of subject matter jurisdiction."  See Thompson v. McCombe, 99 F.3d 352, 353 (9th Cir. 1996).

A challenge to a court's subject matter jurisdiction may be either "facial" or "factual."  Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004).  In a facial attack, "the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction."  Id. (quoting Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004)).  By contrast, in a factual attack, "the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction."  Id. (quoting Safe Air, 373 F.3d at 1039).  Here, the Army's Motion facially attacks the Second Amended Complaint, arguing that the allegations therein do not invoke this Court's subject matter jurisdiction.

**B.   Special Considerations for Pro Se Litigants**

Pro se pleadings and briefs are to be construed liberally.  Balisteri v. Pacifica Police Dep't., 901 F.2d 696 (9th Cir. 1990).  The Court should act with leniency toward pro se litigants when they technically violate a rule.  Draper v. Coombs, 792 F.2d 915, 924 (9th Cir. 1986); Motoyama v. Haw. Dep't of Transp., 864 F. Supp. 2d 965, 975 (D. Haw. 2012).  However, pro se litigants are "not excused from knowing the most basic pleading requirements."  Am. Ass'n of Naturopathic

Physicians v. Hayhurst, 227 F.3d 1104, 1107 (9th Cir. 2000). Pro se litigants must follow the same rules of procedure that govern other litigants. Motoyama, 864 F. Supp. 2d at 975.

## DISCUSSION

"The basic rule of federal sovereign immunity is that the United States cannot be sued at all without the consent of Congress." Block v. North Dakota, 461 U.S. 273, 287, 103 S. Ct. 1811, 75 L. Ed 2d 80 (1983). The FTCA affords a limited waiver of sovereign immunity for civil actions against the government for injuries "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). The FTCA is the exclusive remedy for tort claims against the United States. 28 U.S.C. § 2679; see also F.D.I.C. v. Craft, 157 F.3d 697, 706 (9th Cir. 1998). Because it constitutes a waiver of sovereign immunity, ambiguities must be construed in favor of immunity, F.A.A. v. Cooper, 566 U.S. 284, 290-91, 132 S. Ct. 1441, 182 L. Ed. 2d (2012), and the plaintiff bears the burden of establishing an unequivocal waiver, Holloman v. Watt, 708 F.2d 1399, 1401 (9th Cir. 1983).

The FTCA excludes certain categories of claims from the FTCA's waiver of sovereign immunity, meaning federal courts are without subject matter jurisdiction to hear such claims. Among those are claims "arising out of . . . libel, slander, misrepresentation, [or] deceit." 28 U.S.C. § 2680(h). At the same time, legal malpractice claims involving Department of Defense ("DOD") and Coast Guard lawyers may be brought against the United States "without running afoul" of the misrepresentation exception. Lewis v. United States, 83 F. Supp. 3d 198, 206 (D.D.C. 2015), aff'd, No. 15-5100, 2015 WL 9003971 (D.C. Cir. Oct. 30, 2015); see also 10 U.S.C. § 1054(a) & (e).

The Army argues that (1) Plaintiff's malpractice claim fails on its own terms because there was no attorney-client relationship between Plaintiff and Ms. Orejana, and (2) Plaintiff's allegations are in essence misrepresentation claims, which are expressly excluded from the purview of the FTCA's waiver. The Court agrees with the Army that the absence of an attorney-client relationship is fatal to Plaintiff's legal malpractice claim (and therefore his alleged basis for subject-matter jurisdiction). That finding is enough to warrant dismissal of the Second Amended Complaint. Nonetheless, even if the Court were to liberally construe Plaintiff's Complaint as asserting something other than legal malpractice (thus taking it

out of the scope of 10 U.S.C. § 1054), the Court finds the misrepresentation exception would apply, barring this Court from exercising jurisdiction.  In sum, treating Plaintiff's claim as one for legal malpractice, it fails on its own terms (not because of the misrepresentation exception); construing Plaintiff's claim as some other tort (e.g., negligence, misrepresentation), then it would fall within the misrepresentation exception.  Under any theory, Plaintiff's claims are not viable and the Court is without jurisdiction.[2]

**I.   The Legal Malpractice Claim**

The Second Amended Complaint asserts a single claim for "legal malpractice" based on the alleged conduct of Ms. Orejana, an Army attorney.  Plaintiff purportedly seeks to establish subject-matter jurisdiction based on 28 U.S.C. § 1054(e), which provides that malpractice claim may be brought against the Army without implicating § 2680(h).  In other words,

---

[2] The Court notes that some of the allegations in the Second Amended Complaint echo the allegations dismissed by the Court in the Prior Dismissal Order.  For example, Plaintiff alleges in passing "retaliation," a "loss of employment opportunities," and "violations of his 1st Amendment rights."  The employment-related claims of retaliation and loss of employment fall within the category of claims the Court previously dismissed with prejudice.  As for any allegations based on a violation of the First Amendment, the Court already held that such a claim is based on federal—not state—law and thus falls outside the scope of the FTCA.

More broadly, Plaintiff's claims in the Second Amended Complaint all rely on the premise that he is entitled to mileage reimbursement for travel for the period he was assigned to Schofield Barracks.  As noted above and in the Prior Dismissal Order, that issue was already ruled on by Judge Kobayashi and is now on appeal.  The Court will not re-litigate the issues already decided in the 2017 Reimbursement Action.  See Taylor v. Sturgell, 553 U.S. 880, 892, 128 S. Ct. 2161, 171 L. Ed. 2d 155 (2008).

Plaintiff seeks to avoid contending with the misrepresentation exception altogether.

The Court must decide whether Plaintiff has shown that Hawai`i law would impose liability for legal malpractice against a private person in these circumstances.  Under Hawai`i law, a claim for legal malpractice requires a plaintiff to prove four elements:  "(1) the parties had an attorney-client relationship, (2) the defendant committed a negligent act or omission constituting breach of that duty, (3) there is a causal connection between the breach and the plaintiff's injury, and (4) the plaintiff suffered actual loss or damages."  Thomas v. Kidani, 126 Haw. 125, 129, 267 P.3d 1230, 1234 (2011). Plaintiff's problem here lies with the first element:  whether the parties had an attorney-client relationship.

Hawai`i courts have held that an attorney owes no duty to her client's adversary.  See Buscher v. Boning, 114 Haw. 202, 220, 159 P.3d 814, 832 (2007) ("[The] creation of a duty in favor of an adversary of the attorney's client would create an unacceptable conflict of interest." (quoting Myers v. Cohen, 5 Haw. App. 232, 25-46, 687 P.2d 6 (Ct. App. 1984), rev'd on other grounds, 67 Haw. 389, 688 P.2d 1145 (1984))).  Here, the Second Amended Complaint alleges that Ms. Orejana was employed by the Army and advised and defended the Army in response to administrative proceedings brought by Plaintiff.  See 2AC 1-2

(alleging that Ms. Orejana, "while working within the scope of her federal employment <u>as a US Army lawyer</u>, provided a legal review <u>to the agency</u>" and "filed pleadings to the CBCA <u>in response to Plaintiff's claim</u>" (emphasis added)).  According to pleadings submitted with the Complaint, Ms. Orejana plainly represented the interests of the Army, not Plaintiff.  <u>See</u> 2AC, Exs. B & C.  The attorney-client relationship in this case was thus between Ms. Orejana and Plaintiff's adversary—the Army—not between Ms. Orejana and Plaintiff.

Plaintiff cites Hawai`i Supreme Court case <u>Blair v. Ing</u>, 95 Haw. 247, 21 P.3d 452 (2001), for the proposition that Hawai`i law allows for "claims of legal malpractice against an attorney by a third person not in privity." Opp. 9-10.  He contends that he can sue the Army for legal malpractice because he was an intended beneficiary of Ms. Orejana's legal advice.  <u>Blair</u> is inapposite.  Its explicitly narrow holding applies only "in the estate planning context."  <u>Id.</u> at 260-61, 21 P.3d at 465-66 ("[W]e emphasize that our holding today does not create a blanket duty of care to all non-client beneficiaries in every case.").  And Plaintiff has offered no basis for finding that he was an intended beneficiary of legal advice to and filings on behalf of Plaintiff's adversary.  Thus, this case involves neither estate planning nor a circumstance where Plaintiff could

be described as a "beneficiary" to the legal advice Ms. Orejana provided to her employer.

Beyond the unremarkable notion that an attorney does not owe her client's adversary a duty of care, other factors also favor a finding that no attorney-client relationship existed between Plaintiff and Ms. Orejana.  Courts generally look to the nature of the interaction between the parties.  "An attorney-client relationship is contractual and consensual, and such a relationship can be formed only with the consent of the attorney and individual seeking representation." Boskoff v. Yano, 57 F. Supp. 2d 994, 998 (D. Haw. 1998).  "An attorney-client relationship is formed when an attorney renders advice directly to a client who has consulted him seeking legal counsel."  Id. (citing Waggoner v. Snow, Becker, Kroll, Klaris & Krauss, 991 F.2d 1501, 1505 (9th Cir. 1993)).  And while the subjective belief of the "client" as to whether such a relationship existed is a relevant factor, "the belief must be objectively reasonable under the totality of the circumstances, which includes consideration of factors such as the intent of the alleged client and attorney and payment arrangements."  Id. (internal citations and quotation marks omitted).

Here, viewing the allegations in the light most favorable to Plaintiff, any subjective belief on the part of Plaintiff that an attorney-client relationship existed is not

- 11 -

objectively reasonable.  He himself admits that Ms. Orejana was advising the Army in the scope of her employment as an Army lawyer, and any purported wrongdoing was done in the course of her advice to and representation of the Army, not Plaintiff. For these reasons, Plaintiff has failed to allege the existence of an attorney-client relationship between himself and Ms. Orejana.

In the absence of an attorney-client relationship, there is no viable legal malpractice claim.  And without a viable claim for legal malpractice, Plaintiff has failed to show that § 1346(b)(1) and § 1054(e)'s waiver of sovereign immunity applies.

**II.  The Misrepresentation Exception**

The Court's finding that the legal malpractice claim fails is sufficient to dismiss the Second Amended Complaint entirely.  As discussed above, certain legal malpractice claims may be brought against the United States without implicating the misrepresentation exception at all.  So because Plaintiff's legal malpractice fails, the Court need not rely separately on the misrepresentation exception.  Plaintiff is pro se, however. For that reason, the Court will briefly address why—even assuming the Court could liberally construe the Second Amended Complaint as alleging something other than legal malpractice— Plaintiff's claims would still be jurisdictionally barred.

Assuming without deciding that the Second Amended Complaint alleges alternative claims to legal malpractice (e.g., simple negligence, negligent or intentional misrepresentation), the Court finds that the misrepresentation exception would bar those claims from the waiver of sovereign immunity.  The reasons are largely the same as those discussed by the Court in the Prior Dismissal Order, which the Court will not rehash in detail here.

As alluded to earlier and as the Court explained in the Prior Dismissal Order, the FTCA's misrepresentation exception "shields government employees from tort liability for failure to communicate information, whether negligent, or intentional." Lawrence v. United States, 340 F.3d 952, 958 (9th Cir. 2003).  The parties agree on the legal framework for deciding whether a claim falls within the misrepresentation exception, whereby courts consider the distinction between "the performance of operational tasks and the communication of information." United States v. Fowler, 913 F.2d 1382, 1387 (9th Cir. 1990) (quoting Guild v. United States, 685 F.2d 324, 325 (9th Cir. 1982)).  Plaintiff argues that the conduct alleged in the Second Amended Complaint hinges on Ms. Orejana's performance of operational tasks, while Defendants argue that the gravamen of the claim is the communication of information.[3]

---

[3] These arguments raise an interesting intersect between § 2680(h)'s
(Continued . . . )

Plaintiff's claims against Ms. Orejana in the Second Amended Complaint are no different from those dismissed by the Court in the Prior Dismissal Order (the only difference being the label of "legal malpractice"). The Court already held that the "crux" of these allegations is "the communication of misleading information, not negligent or wrongful performance of operational tasks." Prior Dismissal Order at 18. Thus, reading the same factual allegations in the Second Amended Complaint would lead the Court to the same conclusion: even assuming that the general waiver of sovereign immunity applies in the first place, the misrepresentation exception set forth in § 2680(h) would bar jurisdiction.

---

misrepresentation exception and § 1054(e)'s exemption of legal malpractice claims from that exception. In addressing the distinction between operational tasks and communication of information, both Plaintiff and the Army cite the example of a claim based on the alleged negligence of a government physician failing to warn a patient of risks associated with a surgery. See Ramirez v. United States, 567 F.2d 854 (9th Cir. 1977). The Court need not square that example with the circumstances here. If Plaintiff could show that he and Ms. Orejana had a relationship akin to the plaintiff and the government physician in that example, then he would not need to rely on the distinction analysis anyway because the statutory exemption for claims involving legal advice would apply. See 10 U.S.C. § 1054(e). In other words, if Plaintiff were successful in pleading legal malpractice, the misrepresentation exception would not be a hurdle in the first place. Because he has failed to allege the existence of an attorney-client relationship, it follows that the gravamen of the claims is not legal malpractice, but the miscommunication of information. Cf. Lambert v. United States, No. 15-CV-147 PLR-HBG, 2016 WL 632461, at *3-4 (E.D. Tenn. Feb. 17, 2016) (holding that the "essence" of the claims were "not [the attorney's] malpractice, but his communication of misinformation" and thus holding that § 2680(h) applied). In other words, the misrepresentation exception must apply.

## **CONCLUSION**

For the foregoing reasons, the Court GRANTS the Army's Motion to Dismiss, ECF No. 43, and DISMISSES the Second Amended Complaint, ECF No. 42, for lack of subject-matter jurisdiction. The Court previously cautioned Plaintiff that his failure to cure the defects identified in the Prior Dismissal Order would result in dismissal with prejudice.  Plaintiff has failed to plead an essential element of his legal malpractice claim (the existence of an attorney-client relationship) and any attempt to do so would be futile.  Moreover, no matter how liberally the Court reads Plaintiff's claims, they in essence hinge on allegations of either misrepresentation (which are barred by the FTCA's misrepresentation exception) or wrongful employment practices (which the Court already dismissed with prejudice).

Because it is clear that Plaintiff's claims could not be saved by amendment, the Second Amended Complaint is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

DATED:  Honolulu, Hawai`i, August 13, 2020.

_____
Alan C. Kay
Sr. United States District Judge

Aubart v. McCarthy, Civ. No. 19-00459 ACK-KJM, Order Granting Defendant's Motion to Dismiss Plaintiff's Second Amended Federal Tort Claims Act Complaint.